**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| KIM J. MCGAUGHEY, )<br>)<br>　　　　　Plaintiff, )<br>　vs. )<br>)<br>)<br>MICHAEL J. ASTRUE, Acting Commissioner )<br>　of the Social Security Administration, )<br>)<br>　　　　　Defendant.[1] ) | 1:05-cv-1160-SEB-JMS |

**Entry Discussing Complaint for Judicial Review**

Kim J. McGaughey ("McGaughey") seeks judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of his application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"), 42 U.S.C. § 301, *et seq*.

For the reasons explained in this Entry, the Commissioner's decision must be **remanded** for further proceedings.

**I. BACKGROUND**

McGaughey applied for DIB on May 2, 2002, alleging an onset date of January 1, 1997. His application was denied initially and upon reconsideration. His request for a hearing before an Administrative Law Judge ("ALJ") was granted, and such hearing was conducted on November 12, 2003. McGaughey was present, accompanied by his attorney. Medical and other records were introduced into evidence. McGaughey and a vocational expert testified. The ALJ denied McGaughey's application on February 3, 2004. On June 15, 2005, the Appeals Council denied McGaughey's request for review of the ALJ's decision, making the ALJ's decision final, *see Luna v. Shalala,* 22 F.3d 687, 689 (7th Cir. 1994), and this action for judicial review of the ALJ's decision followed. The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g), which provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . in [a] district court of the United States."

---

[1] On February 12, 2007, Michael J. Astrue was sworn in as the Commissioner of Social Security. Pursuant to Rule 25(d) of the *Federal Rules of Civil Procedure*, Michael J. Astrue, in his official capacity only, is substituted as the defendant in this action.

The ALJ's decision included the following findings: (1) McGaughey met the disability insured status requirements of the Act at all times relevant to the ALJ's decision; (2) McGaughey had not engaged in substantial gainful activity at any time relevant to the ALJ's decision; (3) the medical evidence established that McGaughey had "severe" impairments consisting of degenerative cervical disc disease status post multiple cervical surgeries, degenerative thoracic disc disease, degenerative lumbar disc disease, a schizoaffective disorder, a dysthymic disorder, depression not otherwise specified, posttraumatic stress disorder, a personality disorder not otherwise specified, a mixed personality disorder with primarily borderline and antisocial traits, and marijuana abuse in partial remission as of early 2002, and that his high cholesterol and acid reflux did not constitute "severe" impairments; (4) McGaughey did not have an impairment or combination of impairments listed in, or medically equal to, one listed in Appendix 1, Subpart P, Regulations No. 4; (5) McGaughey retained the residual functional capacity ("RFC") to perform light exertional work with the following restrictions and limitations: the work must allow him to alternate into a sitting or standing position for periods totaling about one to two minutes per hour, no more than occasional bending, squatting, or climbing of ramps or stairs, no kneeling, crawling, or climbing of ladders, ropes or scaffolds, avoid work at unprotected heights, work around dangerous machinery, operating a motor vehicle, being around open flames and being around large bodies of water, no overhead work, no repetitive forceful gripping or operation of vibrating tools, the work should be simple and repetitive in nature, and no more that superficial interaction with the general public, coworkers or supervisors; (6) McGaughey's subjective complaints and allegations concerning the severity of his impairments were not reasonably consistent with the objective medical and other evidence of record; (7) McGaughey was unable to perform his past relevant work as a drywall hanger or mill helper; (8) McGaughey was a younger individual, he had a ninth grade education but later earned a GED in the military, and he had no transferable skills; (9) based on an exertional capacity for light work, and McGaughey's age, education and work experience, Medical-Vocational Rule 202.21 would direct a conclusion of "not disabled;" (10) although McGaughey's restrictions and limitations did not allow him to perform the full range of light work, using Rule 202.21 as a framework for decision-making, there were a significant number of jobs in the State of Indiana which he could perform, including assembler (1800 light jobs), hand packer (5125 light jobs), kitchen helper (1362 light jobs), assembler (2500 sedentary jobs), and hand packer (99 sedentary jobs); and (11) McGaughey's capacity for light work had not been significantly compromised by exertional and nonexertional restrictions and limitations, and therefore, using Rule 202.21 as a framework for decision-making, he was not disabled. With these findings in hand, and through the application of applicable rules and regulations, the ALJ concluded that McGaughey had not been disabled within the meaning of the Act at any time relevant to the ALJ's decision.

## II.  DISCUSSION

### A.  Applicable Law

To be eligible for disability benefits, a claimant must prove he is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1).

A five-step inquiry outlined in Social Security regulations is used to determine disability status. *Butera v. Apfel,* 173 F.3d 1049, 1054 (7th Cir. 1999).

> In order to determine whether an individual is entitled to disability insurance benefits, the ALJ must engage in a sequential five-step process which establishes whether or not the claimant is disabled. The claimant must show that: (1) he is not presently employed; (2) his impairment is severe; (3) his impairment is listed or equal to a listing in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) he is not able to perform his past relevant work; and (5) he is unable to perform any other work within the national and local economy. *Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir.1997); 20 C.F.R. § 416.920.

*Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

The task a court faces in a case such as this is not to attempt a *de novo* determination of the plaintiff's entitlement to benefits, but to decide if the Commissioner's decision was supported by substantial evidence and otherwise is free of legal error. *Kendrick v. Shalala,* 998 F.2d 455, 458 (7th Cir. 1993). "Substantial evidence" has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB,* 305 U.S. 197, 229 (1938)).

### B.     Analysis

The ALJ found that McGaughey had "severe" impairments of degenerative cervical disc disease status post multiple cervical surgeries, degenerative thoracic disc disease, degenerative lumbar disc disease, a schizoaffective disorder, a dysthymic disorder, depression not otherwise specified, posttraumatic stress disorder, a personality disorder not otherwise specified, a mixed personality disorder with primarily borderline and antisocial traits, and marijuana abuse in partial remission as of early 2002, but that he could perform some jobs which existed in significant numbers in the national economy. (R. at 24-25). McGaughey alleges that the ALJ erred by not properly considering evidence favorable to McGaughey and by making independent medical findings. Specifically, McGaughey contends that the ALJ erred by not giving the opinion of treating psychologist Dr. Herman controlling weight. McGaughey further argues that the ALJ erred by improperly assessing his credibility.

Psychologist Dr. Herman treated McGaughey from February 2002 through November 2003.  The ALJ noted that Dr. Herman concluded that McGaughey was not able to attend to a simple work routine on a consistent basis.  (R. at 22).  The ALJ also noted that Dr. Herman opined that McGaughey had difficulty interacting with others due to anger, impulsivity and paranoia, and that he was unable to perform tasks without close supervision and frequent rest periods due to memory and physical limitations. *Id.* Although not specifically mentioned by the ALJ, Dr. Herman reviewed McGaughey's psychological tests as revealing his long-standing difficulties with stress management, no coping skills, being easily overwhelmed, tending to withdraw and isolate himself from interpersonal relationships, having a paranoid delusional disorder, anger, and no control over his emotional experience and expression. (R. at 244-45). Dr. Herman opined that McGaughey

was sleep deprived, irritable, had problems with concentration and persistence of pace, was paranoid and hypervigilant suspecting others of trying to harm him, and that his anger, impulsivity and paranoia had impaired his ability to maintain employment, access social services, and engage in meaningful relationships. (R. at 148-49, 262-66). The ALJ rejected Dr. Herman's opinions, in part, because they were "not supported by his daily and social activities." (R. at 22).

McGaughey argues that his daily and social activities were not fairly or accurately represented by the ALJ, and, therefore, his evaluation of Dr. Herman's opinion was tainted. The ALJ stated that McGaughey was able to maintain personal hygiene and grooming, do light household cleaning, cook, do laundry, drive, shop, watch television and movies, pay bills, mow the lawn, visit with his girlfriend and raise two children. (R. at 22). Even assuming for purposes of this decision that the ALJ adequately described McGaughey's ability to perform daily activities, it is not apparent how McGaughey's minimal daily or social activities, as noted by the ALJ, would discredit the psychologist's opinion that McGaughey was not able to attend to a simple work routine on a consistent basis, had difficulty interacting with others due to anger, impulsivity and paranoia, and was unable to perform tasks without close supervision and frequent rest periods due to memory and physical limitations. *See Carradine v. Barnhart,* 360 F.3d 751, 755 (7th Cir. 2004) (ALJ "failed to consider the difference between a person's being able to engage in sporadic physical activities and her being able to work eight hours a day five consecutive days of the week").

The ALJ also rejected Dr. Herman's conclusions because they were "not well supported by the objective medical and other evidence of record." (R. at 22). In support thereof, the ALJ noted "discrepancies of record which lead me to doubt the conclusions of Dr. Herman." The ALJ stated that in October 2003, Dr. Herman reported side effects of medications, but no side effects were noted in September 2002. *Id.* This is not a "discrepancy" because the notations were recorded a year apart and addressed different medications. In September 2002, only two medications were prescribed when no complaints were noted, and in October 2003, five medications were prescribed. (R. at 153, 262). In addition, it appears that in the October 2003, report Dr. Herman simply stated that the medications "*can cause* dizziness, drowsiness, fatigue, and stomach upset." (R. at 262) (emphasis added). The ALJ also indicated that Dr. Herman misstated the record in September 2002 when he noted that the highest GAF in the previous twelve months was 60 (rather than 68-70 as indicated by the ALJ). (R. at 147). Although Dr. Herman may have misstated the highest GAF in the past year, it does not follow, necessarily, that the psychologist's opinions concerning McGaughey's psychological impairments should be rejected in large degree for what could be a type of clerical error. Moreover, Dr. Herman's finding on that same report that McGaughey's current GAF was 40 can indicate a major impairment in several areas. The ALJ does not rely on any other mental health source opinion in support of his RFC assessment. In sum, the ALJ's rationale for rejecting Dr. Herman's opinions is not supported by substantial evidence.

McGaughey argues that significant evidence-- a March 2003 MRI, physical therapist report of July 2003, and clinical tests of June through October 2003--became part of the record long after the last review of a state agency physician, on June 20, 2002, and after any other physician review. He contends that there is no medical source opinion as to the severity of McGaughey's piriformis tenderness and spasm condition, or the significance of the clinical findings, nor is there an interpretation of the MRI results showing neurofaminal

narrowing and flattening of the ventral cord. The ALJ acknowledged that the state agency physicians and consulting non-examining physicians did not have the benefit of reviewing the hearing testimony or the evidence submitted after the reconsideration decision. (R. at 22-23).  On remand, a more substantial portion of the record, if not all, shall be reviewed by medical sources to avoid the ALJ attempting to render interpretations of clinical observations, tests, and other medical evidence in the first instance. *See Rohan v. Chater,* 98 F.3d 966, 970 (7th Cir. 1996) ("[A]s this Court has counseled on many occasions, ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.").

McGaughey argues that the ALJ's credibility determination is not supported by substantial evidence. The ALJ concluded that McGaughey's "subjective complaints and allegations concerning the severity of his impairments are not reasonably consistent with the objective medical and other evidence of record." (R. at 21). The Commissioner responds that the ALJ gave several reasons for this finding. First, a physical therapist observed that McGaughey's complaints were inconsistent with the MRI results. *Id.* It is questionable, however, whether a physical therapist would have the expertise to evaluate an MRI, plus it is noteworthy that under the circumstances, McGaughey's pain had been temporarily relieved from his treatment on that particular day.  (R. at 302). Indeed, no other medical source provided a functional analysis of the MRI results.

The Commissioner further argues that the ALJ considered McGaughey's ability to perform a variety of daily activities despite his allegations of disabling limitation. Although it is proper to consider a claimant's activities as one factor when determining credibility, reliance on a claimant's minimal daily activities does not form an adequate basis to discredit his allegations of disability. *See Carradine v. Barnhart,* 360 F.3d 751, 755 (7th Cir. 2004) (ALJ "failed to consider the difference between a person's being able to engage in sporadic physical activities and her being able to work eight hours a day five consecutive days of the week"); *Clifford v.Apfel,* 227 F.3d 863, 872 (7th Cir. 2000) (performing some household chores, cooking simple meals, and occasional grocery shopping are "minimal" activities). Although the ALJ noted that McGaughey experienced decreased pain with medication, trigger point injections and facet joint injections, the ALJ failed to also note that the improvement was only temporary. The ALJ noted that there were objective signs of physical impairments, including tenderness, intermittent positive straight leg raises, Patrick's sign, and quad loading, (R. at 21), but he did not analyze these findings in the context of his conclusion that the objective medical evidence failed to support McGaughey's complaints. Although the court grants special deference to the credibility determination made by the ALJ and generally will not overturn it unless it is "patently wrong," *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir.2001), in this case the court cannot trace the path of the ALJ's reasoning, even with the allowance of the Commissioner's generous interpretation of the ALJ's rationale. On remand, the ALJ will reevaluate McGaughey's credibility.

### III.  CONCLUSION

For the reasons described, the ALJ's decision is not supported by substantial evidence and the court is required to **remand** the case to the ALJ for further consideration. *Melkonyan v. Sullivan,* 501 U.S. 89, 98 (1991) (a court may remand the case after passing on its merits and issuing a judgment affirming, modifying, or reversing the Commissioner's decision, a "sentence four" remand).

Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**


Date:     3/13/07                                    _Sarah Evans Barker_

                                                       SARAH EVANS BARKER, JUDGE
                                                       United States District Court
                                                       Southern District of Indiana